UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 15-3675(DSD/KMM)

Equal Employment Opportunity Commission,

    Plaintiff,

v.        **ORDER**

North Memorial Health Care,

    Defendant.

    Tina Burnside, Equal Employment Opportunity Commission, 330 Second Avenue South, Suite 720, Minneapolis, MN 55401, counsel for plaintiff.

    Karen G. Schanfied, Esq., Krista A.P. Hatcher, Esq and Fredrikson & Byron, PA, 200 South 6th Street, Suite 4000, Minneapolis, MN 55402, counsel for defendant.


This matter is before the court upon the motion for summary judgment by defendant North Memorial Health Care. Based on a review of the file, record, and proceedings herein, and for the following reasons, the court grants the motion.


**BACKGROUND**

This Title VII dispute arises out of North Memorial's rescission of Emily Sure-Ondara's conditional offer of employment. North Memorial is a healthcare provider based in Robbinsdale, Minnesota. Wombacher Decl. ¶ 3. As part of an effort to attract a diverse workforce, North Memorial started the Advanced Beginner Program, which is a residency program that provides hospital experience to registered nurses. Id. ¶¶ 5-6. The employment terms

and conditions for nurses hired under the program are governed by the collective bargaining agreement between North Memorial and the Minnesota Nurses Association (Union Agreement).  See id. ¶ 8; Hatcher Aff. Ex. K.

Sure-Ondara is a Seventh Day Adventist and nurse.  In November 2013, Nicholas Wombacher, a Human Resources Generalist at North Memorial, emailed Sure-Ondrara and encouraged her to apply for the Advanced Beginner Program.  Sure-Ondara Dep. at 151:12-20.  Sure-Ondara applied for the a position in North Memorial's Collaborative Acute Care for the Elderly (CACE) unit.  Wombacher Dep. at 25:25-26:10, 32:10-17; Sure-Ondara Dep. at 154:18-23.  On November 11, 2013, after interviews with Wombacher and Anthony Levens, the Assistant Nurse Manager for the CACE unit, North Memorial extended Sure-Ondara a conditional offer of employment.  Sure-Ondara Dep. at 153:7-9; Hatcher Aff. Ex. J.  Sure-Ondara was scheduled to work the night shift from 11 p.m. to 7 a.m. and, per the Union Contract, was also required to work every other weekend.  Wombacher Decl. ¶¶ 11-12; Hatcher Aff. Ex. J.

After receiving the offer, Sure-Ondara told Lisa Clements, a Human Resources receptionist, that she could not work on Friday nights for religious reasons and would need an accommodation.  Sure-Ondara Dep. at 159:6-8; Clements Dep. at 25:23-25.  Lisa Minshull, a Human Resources generalist, called Sure-Ondara to obtain more information about her request, and Sure-Ondara

explained that she could not work on Friday nights because she is a Seventh Day Adventist. Sure-Ondara Dep. at 160:17-161:15; Minshull Dep. at 20:6-21:11. Minshull advised Sure-Ondara that she was required to work every other weekend under the terms of the Union Agreement and that if she was unable to do so, North Memorial may need to offer the position to another candidate. Sure-Ondra Dep. at 161:22-162:6. Sure-Ondara responded that she would "make it work." Sure-Ondara Dep. at 162:4-13; Minshull Dep. at 22:18-22; Hatcher Aff. Ex. M. Sure-Ondara explained that she would either find a substitute for her Friday night shift or come in if she could not find a replacement. Minshull Dep. at 26:2-7; Sure-Ondara Dep. at 162:8-19, 189:12-190:6. Wombacher, Melissa Smith, the Manager of Talent Management, and Renee Conklin, the Director of Human Resources met to discuss Sure-Ondra's accommodation request. Conklin Dep. at 43:23-44:10. They concluded that granting her request was not feasible, and they were also concerned that she would not show up for her Friday night shift. Therefore, they decided to rescind Sure-Ondara's conditional employment offer. Conklin Dep. at 61:21-62:13, 97:25-98:12; Smith Dep. at 35:17-37:25, 61:1-9; Wombacher Dep. at 64:6-21, 74:19-23.

On November 20, 2013, Wombacher sent Sure-Ondara a letter stating that North Memorial could not grant her schedule modification request and revoking her offer of employment. See Hatcher Aff. Ex. N. The letter also stated that North Memorial was

3

willing to consider her for other positions. See id. Sure-Ondara applied for other positions with North Memorial without success. Sure-Ondara Dep. at 231:8-232:10.

On December 13, 2013, Sure-Ondara filed a discrimination claim with the Equal Employment Opportunity Comission (EEOC). See Hatcher Aff. Ex. Q. Sure-Ondara claimed that North Memorial had (1) engaged in religious discrimination by denying her requested accommodation; (2) discriminated against her because she was pregnant; and (3) retaliated against her for requesting a religious accommodation. See id. After an investigation, the EEOC concluded that there was probable cause to find that North Memorial had retaliated against Sure-Ondara by revoking her employment offer because she requested an accommodation. See Hatcher Aff. Ex. R. The EEOC also concluded that there was not a sufficient basis to pursue the religious discrimination or pregnancy discrimination claims.

On September 16, 2015, the EEOC filed suit against North Memorial alleging that it violated 42 U.S.C. § 2000e-3(a) by retaliating against Sure-Ondara for requesting a religious accommodation. North Memorial now moves for summary judgment.

**DISCUSSION**

I.  **Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient ....").

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. Id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. Celotex, 477 U.S. at 324. A party asserting that a genuine dispute exists - or cannot exist - about a material fact must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23.

**II. Retaliation**

To establish a prima facie case of retaliation, the EEOC must show that (1) Sure-Ondara engaged in protected conduct, (2) she suffered an employment action that would dissuade a reasonable employee from making a charge of discrimination, and (3) that there is a causal connection between the two. See Higgins v. Gonzales, 481 F.3d 578, 589 (8th Cir. 2007), abrogated on other grounds by Togerson v. City of Rochester, 643 F.3d 1031 (8th Cir. 2011) (en banc).

North Memorial argues that the EEOC's claim should be dismissed because requesting a religious accommodation is not a protected activity. As far as the parties, and the court, is aware, no court in this circuit has decided whether requesting a religious accommodation is protected activity under Title VII. In answering this question, the court must interpret Title VII according to its "plain language." Hennepin Cnty. v. Fed. Nat'l Mortg. Ass'n, 742 F.3d 818, 821 (8th Cir. 2014). The court must "give words their ordinary, contemporary, common meaning unless they are otherwise defined in the statute itself." Id. (internal quotations marks omitted) (quoting United States v. Friedrich, 402 F.3d 842, 845 (8th Cir. 2005)); see also Milner v. Dep't of Navy, 562 U.S. 562, 569 (2011) (quoting Park'n Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 194 (1985)) ("Statutory construction must begin with the language employed by Congress and the

assumption that the ordinary meaning of that language accurately expresses the legislative purpose.").

Under Title VII, an employee engages in protected activity when she either (1)"oppose[s] any practice made an unlawful employment practice by [Title VII]" or "ma[kes] a charge, testifie[s], assist[s], or participate[s] in any manner in an investigation, proceeding, or hearing under [Title VII]. 42 U.S.C. § 2000e-3(a). "The two clauses of this section typically are described, respectively, as the opposition clause and the participation clause." Barker v. Mo. Dep't of Corr., 513 F.3d 831, 834 (8th Cir. 2008) (internal quotations marks omitted).

Applying the plain language of the statute, the court concludes that requesting a religious accommodation is not a protected activity. Under the opposition clause, a plaintiff must communicate her opposition to a practice that she believes, in good faith, is unlawful. Id. at 834. There is no evidence that Sure-Ondra believed that North Memorial's denial of her religious accommodation request was unlawful. And even if she did, she did not communicate that belief to North Memorial. In other words, merely requesting a religious accommodation is not the same as opposing the allegedly unlawful denial of a religious accommodation. See Perlman v. Mayor and City Council of Baltimore, No. SAG-15-1620, 2016 WL 640772, at *6 (D. Md. February 18, 2016) ("[Plaintiff's] making a religious accommodation request is not

7

protected activity. The making of such a request [does not] oppose any practice of the City."); St. Juste v. Metro Plus Health Plan, 8 F. Supp. 3d 287, 323 (E.D.N.Y. 2014) ("This email is not protected activity ... in view of the absence of any reference to concerns about discrimination."); Payne v. Salazar, 899 F. Supp. 2d 42, 52 (D.D.C. 2012) (internal quotation marks omitted) ("Although Plaintiff mentions the purpose of her leave - to attend church - she nowhere opposes, complains of, or even mentions Defendant's prior refusals of [her] request; nor does she state anything to indicate that she would consider the failure to grant her leave request to be discriminatory."); see also Kirkeberg v. Canadian Pac. Ry., 619 F.3d 898, 907 (8th Cir. 2010) (citation and internal quotation marks omitted) ("An employee who asserts a right under [the ADA] to obtain reasonable accommodation for an alleged disability has not opposed any act or practice made unlawful by the ADA.").[1] Therefore, Sure-Ondra's accommodation request is not protected activity under the opposition clause.

Neither is Sure-Ondra's accommodation request protected activity under the participation clause. There is no evidence that Sure-Ondra "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" prior to

---

[1] Indeed, the court in Kirkeberg found that requesting an accommodation under the ADA was a protected activity because it was bound to apply Heisler v. Metro. Council, 339 F.3d 622, 629-30 (8th Cir. 2003). Id. at 907-08. Such binding precedent does not exist for Title VII claims.

8

her termination. Indeed, no such proceedings had commenced prior to or at the time of her termination. The court is unable to fit Sure-Ondra's accommodation request within the plain language of the statute. See Perlman, 2016 WL 640772, at *6 (holding that requesting an accommodation does not fall under the participation clause of Title VII); see also Kirkeberg, 619 F.3d at 907 (internal quotation marks omitted) ("An employee who asserts a right under [the ADA] to obtain reasonable accommodation ... [has not] testified, assisted, or participated in any manner in an investigation, proceeding or hearing under the ADA.").

The EEOC argues that the court should apply Heisler, in which the Eighth Circuit held that requesting an accommodation was protected activity under the ADA. See 339 F.3d at 632; see also Hill v. Walker, 737 F.3d 1209, 1219 (8th Cir. 2013) ("We assume for the sake of analysis, in light of Heisler, that ... requesting [an] accommodation ... [is] protected activity under the ADA."); Kirkeberg, 619 F.3d at 908 ("[W]e are bound by Heisler to conclude that making such a[n] [accommodation] request is protected activity ...."). The court, however, is unpersuaded.

First, in light of the Eighth Circuit's recent questioning of Heisler due to its failure to apply the plain language of the statute, the court declines to extend Heisler's reasoning to Title VII claims. See Kirkeberg, 619 F.3d at 907-08 (noting that, under the plain language of the statute, a retaliation claim based on an

9

accommodation claim would "never get[] out of the starting gate").

Second, differences between the ADA and Title VII weigh against applying ADA precedent to a Title VII claim. Namely, the ADA protects a broader range of activity than does Title VII. In addition to its retaliation provision, which is identical to the language in Title VII, the ADA also makes it "unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed ... any right granted or protected by this chapter." 42 U.S.C. 12203(b). Title VII has no such provision. This additional provision in the ADA supports an inference that Congress intended to protect activity that did not fall under the opposition or participation clauses. Moreover, in adding this provision to the ADA, Congress evinced an understanding that the retaliation provision, taken from Title VII, was insufficient in protecting activity that fell outside the plain language of opposition and participation clauses. If Congress wishes to extend the same protection to activity under Title VII, it is free to do so, but it is not appropriate for the court to manipulate the plain language of the statute to dictate policy outcomes. See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 13-14 (2000) ("Achieving a better policy outcome ... is a task for

Congress, not the courts.").[2]

Although some courts have held that requesting an accommodation is a protected activity under Title VII, they did so when the issue was not in dispute and without analyzing Title VII's language. See, e.g., Porter v. City of Chicago, 700 F.3d 944, 957 (7th Cir. 2012) ("We assume, as the parties do, that [plaintiff] engaged in statutorily protected activity, including her request to have Sundays off ...."); Nichols v. Ill. Dep't of Transp., 152 F. Supp. 3d 1106, 1139 (N.D. Ill. 2016) (holding that requesting a religious accommodation "clearly constitutes protected activity" without analyzing the statutory language or citing authority); Jenkins v. New York City Transit Auth., 646 F. Supp. 2d 464, 473 (S.D.N.Y. 2009) (relying on ADA precedent and without analyzing the statutory language in holding that requesting an accommodation is protected activity).[3]  Therefore, the court finds these cases

---

[2] Agency interpretations of statutes that are "contained in formats such as opinion letters are entitled to respect ... but only to the extent that those interpretations have the power to persuade." Christensen v. Harris Cty., 529 U.S. 576, 587 (2000) (internal quotation marks omitted). For the reasons set forth above, the court finds that the EEOC's guidelines, which advise that requesting an accommodation is protected activity under Title VII, are unpersuasive.

[3] The other cases the EEOC cites in support are inapposite because in those cases the court found that the plaintiff's activity constituted a complaint and therefore fell under the opposition clause. Here it is undisputed that Sure-Ondra's activity did not constitute a formal or informal complaint. See, e.g., Lewis v. New York City Transit Auth., 12 F. Supp. 3d 418, 449 (E.D.N.Y. 2014) (holding that plaintiff's conduct fell under the opposition clause of Title VII when she protested discriminatory

11

unpersuasive.

As a result, the court holds that requesting a religious accommodation is not protected activity under Title VII, and summary judgment is therefore warranted.

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1.  Defendant's motion for summary judgment [ECF No. 19] is granted; and

2.  The case is dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 6, 2017

                                            s/David S. Doty
                                            David S. Doty, Judge
                                            United States District Court

---

employment practices); St. Juste, 8 F. Supp. 3d at 323 (holding that plaintiff's conduct was protected activity because it amounted to an informal complaint).