# United States Court of Appeals
## For the Eighth Circuit

---

No. 17-2926

---

Equal Employment Opportunity Commission

*Plaintiff - Appellant*

v.

North Memorial Health Care

*Defendant - Appellee*

------------------------------

General Conference of Seventh-day Adventists, et al.

*Amici on Behalf of Appellant*

---

Appeal from United States District Court
for the District of Minnesota - Minneapolis

---

Submitted: June 12, 2018
Filed: November 13, 2018

---

Before LOKEN, ERICKSON, and GRASZ, Circuit Judges.

---

LOKEN, Circuit Judge.

The Equal Employment Opportunity Commission (EEOC) commenced this action alleging that North Memorial Heath Care (North Memorial) violated 42 U.S.C. § 2000e-3(a), Title VII's provision prohibiting unlawful retaliation, because the effect of withdrawing a conditional offer of employment was to "deprive [Emily] Sure-Ondara of equal employment opportunities . . . as an applicant for employment, in retaliation for her request for an accommodation under Title VII." The district court[1] granted North Memorial summary judgment dismissing this claim, concluding that it had not violated § 2000e-3(a) because it did not "discriminate against [Sure-Ondara] because [she] has opposed any practice made an unlawful employment practice." The EEOC appeals, supported by numerous religious organizations and the ACLU as *amici curiae*. They argue as an issue of first impression that "requests for religious accommodations are protected activity under Title VII's antiretaliation provision." Reviewing *de novo*, we conclude the issue cannot be resolved categorically and affirm on the summary judgment record in this case. See Brannum v. Mo. Dep't of Corr., 518 F.3d 542, 546-47 (8th Cir. 2008) (standard of review).

## I. Background.

Sure-Ondara is a Seventh Day Adventist and a registered nurse. North Memorial, a hospital healthcare provider based in Robbinsdale, Minnesota, conducts an "Advanced Beginner" residency program to attract hospital nurse applicants by providing training to registered nurses who previously worked in non-hospital settings such as home care. In November 2013, Human Resources Generalist Nick Wombacher emailed Sure-Ondara, encouraging her to apply for the Advanced Beginner Program. Sure-Ondara applied and, after an initial screening, attended an open house hiring event where she was interviewed by the Assistant Nurse Manager

---

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

-2-

for North Memorial's Collaborative Acute Care for the Elderly (CACE) Unit. Despite learning that a registered nurse working night shifts in the CACE Unit was required to work eight-hour shifts every other weekend -- terms and conditions established by North Memorial's collective bargaining agreement with the Minnesota Nurses Association -- Sure-Ondara did not disclose that her religion would prevent her from working from sundown on Fridays to sundown on Saturdays.

On November 11, Sure-Ondara was offered and accepted a conditional offer of employment as a Registered Nurse within CACE Hospice and Palliative Care at North Memorial's Robbinsdale hospital. The confirming letter stated: "You will be scheduled to work 8 Hour Night shifts, including every other weekend." When Sure-Ondara went to the hospital to complete pre-employment paperwork, she disclosed for the first time to a receptionist in the Human Resources Department: "I need to be accommodated because of my religious beliefs, that I need Friday nights off for Sabbath rest. I don't work Fridays."

Lisa Minshull, an associate HR generalist with North Memorial, followed up to clarify the request for accommodation. In two phone conversations, Sure-Ondara explained that she could not work on Friday nights because she is a Seventh Day Adventist. Minshull advised that the union agreement required work every other weekend and if Sure-Ondara was unable to do so, North Memorial may need to offer the position to another candidate. Sure-Ondara responded that she wanted the job and would "make it work" by finding a substitute for her Friday night shift or come in herself in an emergency or life-or-death situation.

After these communications, Minshull met with three human resources colleagues to discuss Sure-Ondara's request for religious accommodation. They concluded that North Memorial would rescind the employment offer because it would not be possible for a newly-trained nurse in the Advanced Beginner Program to consistently trade her Friday night shifts, which are unpopular with most nurses, and

-3-

they were concerned that Sure-Ondara would only show up for what she considered to be emergencies.

On November 20, Wombacher wrote Sure-Ondara advising that North Memorial was unable to grant the accommodation she requested, and asking "if you would like to work with us to identify other positions that may be available at North Memorial." Sure-Ondara responded with an email reiterating her willingness to accept the CACE position without an accommodation. Wombacher responded that Sure-Ondara was told during the interview process that the position required work every other weekend, a requirement of the union contract; that altering her schedule would conflict with the requirement that an Advanced Beginner work with a preceptor; and that "the conflicting statements [she] made regarding 'making it work'" led North Memorial to believe she was not willing to work without accommodations. Wombacher again stated that "North Memorial would be pleased to consider you for another position for which you are minimally qualified." Sure-Ondara applied for other positions with North Memorial without success. In February 2014, she was hired by a different hospital into a non-union Home Care and Hospice position that accommodated her religious needs.

In December 2013, Sure-Ondara filed a charge of discrimination with the EEOC alleging *inter alia* that she was "discriminated against because of my religious beliefs/7th Day Adventist . . . and/or in retaliation for requesting religious accommodation in violation of Title VII." In May 2015, the EEOC issued a Letter of Determination that it had "reasonable cause to believe [North Memorial] discriminated against [Sure-Ondara] when [it] retaliated against [her] for requesting a religious accommodation by rescinding the job offer in violation of Title VII." The EEOC filed this enforcement action in September 2015. See § 2000e-5(f), (g). It alleged that North Memorial engaged in unlawful retaliation in violation of 42 U.S.C. § 2000e-3(a) and sought remedies including injunctive relief and back pay, compensatory, and punitive damages for Sure-Ondara.

-4-

## II. Discussion.

Title VII prohibits what is called intentional "disparate treatment" discrimination by declaring it unlawful for an employer to fail or refuse to hire or to discharge any individual "because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1). The term "religion" is defined to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship." § 2000e(j). In E.E.O.C. v. Abercrombie & Fitch Stores, Inc., the Supreme Court construed these two provisions broadly, subject to the "undue hardship" defense:

> Thus, the rule for disparate-treatment claims based on a failure to accommodate a religious practice is straightforward: An employer may not make an applicant's religious practice, confirmed or otherwise, a factor in employment decisions.

> \* \* \* \* \*

> Title VII does not demand mere neutrality with regard to religious practices -- that they be treated no worse than other practices. Rather, it gives them favored treatment, affirmatively obligating employers not "to fail or refuse to hire or discharge any individual . . . because of such individual's" "religious observance and practice."

135 S. Ct. 2028, 2033-34 (2015). This decision makes it clear that Sure-Ondara, as an applicant for employment as a registered nurse at North Memorial, was entitled to reasonable accommodation of her religious practice as a Seventh Day Adventist. Though the events in question predated the Abercrombie & Fitch decision, North Memorial submitted undisputed evidence that its policy and practice at that time was to consider requests for religious accommodations by job applicants on a case-by-case basis, and to grant such requests when the accommodation sought does not pose an

undue hardship.    Sure-Ondara's charge of discrimination included a claim of disparate treatment discrimination, but the EEOC's complaint did not allege a disparate treatment violation of § 2000e-2(a)(1).

Title VII also declares it unlawful for an employer to discriminate against an employee or applicant for employment "because [she] has opposed any practice made an unlawful employment practice by this subchapter," or because she has made a charge of discrimination or participated in any proceeding under this subchapter. § 2000e-3(a). This provision prohibits "employers from retaliating against employees who have acted to vindicate their statutorily protected rights by reporting harassment or discrimination in the workplace." Brannum, 518 F.3d at 547. Its two clauses are referred to as the opposition clause and the participation clause. Id. Only the opposition clause is at issue on this appeal.

To establish a prima facie case of unlawful opposition-clause retaliation under § 2000e-3(a), the EEOC must present evidence that Sure-Ondara opposed a practice made unlawful. "The term 'oppose,' being left undefined by the statute, carries its ordinary meaning." Crawford v. Metro. Gov't of Nashville and Davidson Cty., 555 U.S. 271, 276 (2009). "When an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication virtually always constitutes the employee's *opposition* to the activity." Id. (cleaned up).[2]

---

[2]The issue in Crawford was whether an employee's report of sexually harassing behavior to a human resources officer could support a claim under the opposition clause. The Court held that the ordinary meaning of the word "oppose" goes beyond the "active, consistent" behavior the Sixth Circuit required, agreeing with the above-quoted statement from an EEOC guideline. Crawford does not support the dissent's assertion that "requesting a religious accommodation in most circumstances communicates . . . opposition to its denial." Infra at 12. We reject that interpretation, which stretches the word "oppose" well beyond its plain or ordinary meaning.

Crawford brings into focus an obvious question, what "form of employment discrimination" did Sure-Ondara oppose?  The EEOC's briefs on appeal fail to adequately address this issue.  The EEOC urges us to follow our decision in Ollis v. Hearthstone Homes, Inc., 495 F.3d 570 (8th Cir. 2007), upholding a jury verdict that defendant violated § 2000e-3 by firing an employee because he did not want to participate in an activity that conflicted with his religious beliefs.  But in Ollis, we defined the plaintiff's prima facie case as requiring a showing he "has a bona fide religious belief that *conflicts with* an employment requirement."  Id. at 575.  Attempting to shoehorn this case into that standard, the EEOC argues, "Similarly, in requesting accommodation, like Ollis, Sure-Ondara necessarily was complaining that requiring her to work Friday shifts conflicted with her religious beliefs."  But that is a false equation.  Sure-Ondara did not complain that North Memorial unlawfully *refused to accommodate*.  She *requested* an accommodation, and it is undisputed on this record that North Memorial's *non-discriminatory* practice was to consider such requests on a case-by-case basis.  After she made the request and no mutually acceptable accommodation was reached, Sure-Ondara's Title VII remedy as an unsuccessful job applicant was a *disparate treatment* claim under § 2000e-2(a) for failure to reasonably accommodate.  See Abercrombie & Fitch, 135 S. Ct. at 2032 ("These two proscriptions . . . the 'disparate treatment' (or 'intentional discrimination') provision and the 'disparate impact' provision, are the only causes of action under Title VII.").

For this reason, we agree with the district court that the EEOC failed to establish a prima facie case of opposition-clause unlawful retaliation because "merely requesting a religious accommodation is not the same as opposing the allegedly unlawful denial of a religious accommodation."  In our view, it is noteworthy that, prior to Abercrombie & Fitch, the EEOC took the position "that Title VII creates a freestanding religious-accommodation claim," a position the Court "rightly put[] to rest" in that decision.  135 S. Ct. at 2041 (Thomas, J., concurring in part). Abercrombie & Fitch precludes allowing the EEOC to repackage its rejected

-7-

interpretation of unlawful discrimination under § 2000e-2(a)(1) as an unlawful opposition-clause retaliation claim under § 2000e-3(a).  Consistent with the plain meaning of the word "oppose," the initial request for a religious accommodation simply does not "implicitly" constitute opposition to the ultimate denial of the requested accommodation.

The EEOC argues, and the dissent apparently agrees, that Sure-Ondara has an opposition-clause retaliation claim under § 2000e-3(a) simply because her request for an accommodation was statutorily protected activity, relying on our decisions applying the retaliation provisions of the Americans with Disabilities Act, 42 U.S.C. § 12203.  See Kirkeberg v. Can. Pac. Ry., 619 F.3d 898, 907-08 (8th Cir. 2010); Heisler v. Metro. Council, 339 F.3d 622, 632 (8th Cir. 2003).  We disagree.

To establish a claim of disability discrimination under the ADA, an employee must "inform the employer that an accommodation is needed." Kobus v. College of St. Scholastica, 608 F.3d 1034, 1038 (8th Cir. 2010), quoting 29 C.F.R.App. § 1630.9, at 381 (July 2008 ed.).  Thus, a request for accommodation is ADA-protected activity.  If an employer denies a good faith request for a disability accommodation because the employee does not have a qualifying disability *and* fires the employee for making the request, at a minimum the employee has an ADA retaliation claim under 42 U.S.C. § 12203(b) for interfering with the exercise of the employee's ADA rights.  That was the factual basis for the retaliation claims in Kirkeberg and Heisler.

Whether an employee or job applicant must make a request for religious accommodation to maintain a Title VII claim for religious discrimination under 42 U.S.C. § 2000e-2(a) is an open question after Abercrombie & Fitch.  See 135 S. Ct. at 2033 & n.3.  Even if not required, we construe the express reference to religious accommodation in § 2000e(j) as evidencing Congress' intent to protect requests for religious accommodation.  But the fact that such a request is "protected activity" does

-8-

not mean it is always "oppositional" activity.  Sometimes, it clearly is.  For example, if an employer were so foolish or ignorant as to adopt a policy of not accommodating religious practices, an employee who was fired because she objected to this unlawful policy in requesting an accommodation would have an opposition-clause retaliation claim under § 2000e-3(a), as well as a disparate treatment claim under § 2000e-2(a).  Less fancifully, if an employee or applicant in good faith requested a religious accommodation, and if the employer denied the accommodation on the ground that it was not in fact based on a religious practice *and* fired or refused to hire the employee or applicant because she made the request, the reasoning in ADA cases such as Kirkeberg and Heisler would support an opposition-clause retaliation claim under § 2000e-3(a), even if the employer successfully defended a disparate treatment claim under § 2000e-2(a).  But when an employee or applicant requests a religious accommodation, and the request is denied by an employer such as North Memorial that accommodates reasonable requests that do not cause "undue hardship," there is no basis for an opposition-clause retaliation claim under § 2000e-3(a).  Rather, the employee or applicant's exclusive Title VII remedy is an unlawful disparate treatment or disparate impact claim under § 2000e-2(a)(1).

We generally construe § 2000e-3(a) "broadly to cover opposition to employment actions that are not unlawful, as long as the employee acted in a good faith, objectively reasonable belief that the practices were unlawful." Pye v. Nu Aire, Inc., 641 F.3d 1011, 1020 (8th Cir. 2011) (quotation omitted).  Here, we assume in reviewing the grant of summary judgment that  Sure-Ondara's request for a religious accommodation was based on a good faith, objectively reasonable belief that she was entitled to the requested accommodation.  But the initial request did not reflect, much less communicate, opposition or resistance to any North Memorial employment practice.  If North Memorial in thereafter denying an accommodation breached the duty imposed by § 2000e(j), Sure-Ondara had a claim of unlawful disparate treatment discrimination under § 2000e-2(a)(1).   But as a job applicant with no prior

-9-

employment relationship with North Memorial, her failure to obtain the position she sought did not give rise to a claim of unlawful retaliation under § 2000e-3(a).

The EEOC seeks to avoid this conclusion by emphasizing that North Memorial committed unlawful retaliation when it rescinded its conditional offer of employment. This is sophistry. Sure-Ondara had the same right to religious accommodation as a job applicant under § 2000e(j) with or without a conditional job offer. Thus, rescinding that offer was not an adverse employment action. If timely disclosed, North Memorial had a duty to attempt to accommodate her religious practice. But North Memorial presented evidence that it is not feasible to hire an untrained Advanced Beginner into a team providing Hospice and Palliative Care to elderly patients if the applicant will not work the collectively bargained schedule. There is no duty to accommodate an applicant or employee by hiring or transferring her into a position when she is unwilling or unable to perform one of its essential job functions. See Faidley v. United Parcel Serv. of Am., Inc., 889 F.3d 933, 941 (8th Cir. 2018) (en banc). Whether that principle applied here was an issue to be resolved in a disparate treatment claim asserted under § 2000e-2(a).

The judgment of the district court is affirmed.

GRASZ, Circuit Judge, dissenting.

This case presents an important question: whether a request by a job applicant or employee for a religious accommodation can qualify as "opposition" to an unlawful employment practice under Title VII, and thus form the basis of a retaliation claim under 42 U.S.C. § 2000e-3(a). In light of the Supreme Court's broad interpretation of this provision in *Crawford v. Metropolitan Government of Nashville & Davidson County, Tennessee*, 555 U.S. 271 (2009), and the near-universal consensus of circuit courts of appeals interpreting almost identical statutory language in the Americans with Disabilities Act (ADA), I would answer this question in the

Appellate Case: 17-2926    Page: 10    Date Filed: 11/13/2018 Entry ID: 4725243

affirmative.  Because of this conclusion, and because the EEOC has at least created a genuine dispute of material fact on each element of its claim, I would reverse the district court's grant of summary judgment.

At issue in this appeal is the "opposition clause" of Title VII's anti-retaliation provision: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a).  Conduct that falls under the opposition clause can form the basis of a retaliation claim and is referred to as "protected activity."  *See e.g. Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 174 (2011).

The three elements of a retaliation claim are: (1) protected activity by the plaintiff; (2) materially adverse action against the plaintiff by the defendant; and (3) a but-for causal connection between the first and second elements.  *See Wilson v. Arkansas Dep't of Human Servs.*, 850 F.3d 368, 372 (8th Cir. 2017).

The crux of this case is a legal question bearing on the first element: whether a request for a religious accommodation can constitute "opposition" for purposes of Title VII's anti-retaliation provision.  Unfortunately, simply referring to the "plain" or "ordinary" meaning of this provision does not resolve the interpretive question this case poses since the provision is ambiguous as to its scope.  As the Supreme Court discussed in *Crawford*, "oppose" can carry a narrow definition that would require some overt action, express communication, or direct opposition.  *See Crawford*, 555 U.S. at 276–78.  It can also encompass a broad definition that would include actions or statements that only indirectly or implicitly convey opposition.  *Id.*

While one could reasonably argue the narrower interpretation is the better view, this Court is not writing on a blank slate when addressing this question.  The Supreme Court in *Crawford* adopted an expansive view of the opposition clause, such

-11-

that an individual does not need to directly or overtly communicate opposition to an unlawful employment practice — conduct or communication that reveals opposition, even implicitly, is enough.[3]

Common sense dictates that requesting a religious accommodation in most circumstances communicates support for the grant of the request and opposition to its denial. In other words, the request itself conveys opposition to the employer's failure to accommodate the applicant's (or employee's) religion.[4] Moreover, adopting too high a standard for opposition could have the unintended effect of forcing requesters to take a confrontational approach in order to be afforded Title VII's protections against retaliation.

In addition to the broad interpretation of "opposition" by the Supreme Court in *Crawford*, I am also persuaded by the fact this Court (and virtually every other

---

[3] The Court's opinion describes *Crawford* as involving "an employee's report of sexually harassing behavior to a human resources officer." Importantly, the plaintiff in *Crawford* did not initiate the report, but only answered questions when approached by a human resources employee. The absence of active opposition (i.e. not initiating the complaint) was a primary reason the lower court in *Crawford* ruled against the plaintiff. *See Crawford*, 555 U.S. at 277 (*quoting* 211 F. App'x 373, 376 (6th Cir.2006)).

[4] It is important to note that retaliation claims are not necessarily doomed by the fact that the practice opposed by the plaintiff turns out to not actually be unlawful. Title VII's opposition clause has been held to encompass "opposition to 'employment actions that are not unlawful, as long as the employee acted in a good faith, objectively reasonable belief that the practices were unlawful.'" *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1020 (8th Cir. 2011) (*quoting Bonn v. City of Omaha*, 623 F.3d 587, 591 (8th Cir. 2010)). Here, for summary judgment purposes at least, Sure-Ondara opposed what she believed in good faith was an accommodation to which she was entitled.

circuit court in the country[5]) has held that, under the nearly-identical text of the opposition clause of the anti-retaliation provision of the ADA,[6] a request for an accommodation constitutes protected activity. *See Heisler v. Metro. Council*, 339 F.3d 622, 632 (8th Cir. 2003) ("Requesting an accommodation is a protected activity."). Under general principles of statutory interpretation, statutes *in pari materia* are to be interpreted consistently and identical statutory language in related statutes is to be given the same meaning unless context dictates otherwise. Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 170–73,

---

[5] *Rowlands v. United Parcel Serv. - Fort Wayne*, 901 F.3d 792, 798 (7th Cir. 2018); *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1209 (10th Cir. 2018); *Frazier-White v. Gee*, 818 F.3d 1249, 1258 (11th Cir. 2016); *Solomon v. Vilsack*, 763 F.3d 1, 15 (D.C. Cir. 2014); *A.C. ex rel. J.C. v. Shelby Cty. Bd. of Educ.*, 711 F.3d 687, 698 (6th Cir. 2013); *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 188 (3d Cir. 2010); *Tabatchnik v. Continental Airlines*, 262 F. App'x 674, 676 (5th Cir. 2008); *Coons v. Sec'y of U.S. Dep't of the Treasury*, 383 F.3d 879, 887 (9th Cir. 2004) (discussing ADA provision incorporated into Rehabilitation Act); *Wright v. CompUSA, Inc.*, 352 F.3d 472, 477–78 (1st Cir. 2003); *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 149 (2d Cir. 2002); *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 706 (4th Cir. 2001).

[6] The ADA's enforcement mechanisms were patterned after the earlier-enacted Title VII. *See Gibson v. Arkansas Dep't of Corr.*, 265 F.3d 718, 721 (8th Cir. 2001) ("[I]n drafting the ADA, Congress chose to use existing civil rights enforcement mechanisms."); *Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, 16 (1st Cir. 1997) ("The ADA incorporates the procedures and enforcement mechanisms of Title VII, the basic statute prohibiting discrimination in employment."). The anti-retaliation provisions of the two laws are nearly identical. *Compare* 42 U.S.C. § 12203(a) (prohibiting discrimination (i.e. retaliation) because an individual (1) "has opposed any act or practice made unlawful by" the ADA; or (2) ". . . participated in any manner in an investigation, proceeding, or hearing under" the ADA) *with* 42 U.S.C. § 2000e-3(a) (prohibiting discrimination (i.e. retaliation) because an employee or applicant (1) "has opposed any practice made an unlawful employment practice by" Title VII; or (2) ". . . participated in any manner in an investigation, proceeding, or hearing under" Title VII).

Appellate Case: 17-2926     Page: 13     Date Filed: 11/13/2018 Entry ID: 4725243

252–55 (2012).  This Court has also said that "[r]etaliation claims under the ADA are analyzed identically to those brought under Title VII." *Cossette v. Minnesota Power & Light*, 188 F.3d 964, 972 (8th Cir. 1999).  Accordingly, I would read Title VII's anti-retaliation provision in harmony with how we have read the same provision in the ADA and conclude that Sure-Ondara's accommodation request qualified as protected activity.[7]

As to the second element of its claim, the EEOC has satisfied its burden by presenting evidence that North Memorial "discriminate[d] against" Sure-Ondara.  42 U.S.C. § 2000e-3(a).  In this context, "discriminat[ion]" means action that would dissuade a reasonable employee from engaging in the relevant protected activity, referred to as "materially adverse action." *Burlington N. & Santa Fe Ry. Co. v. White*,

---

[7] I am concerned that the hypothetical examples in the Court's opinion focus on whether an employer has adopted a "policy" of accommodating reasonable requests for religious accommodation.  The relevant statutory language in Title VII authorizes retaliation claims based on opposition to "*any practice* made an unlawful employment practice by" Title VII.  42 U.S.C. § 2000e-3(a) (emphasis added).  A "practice" under § 2000e-3(a) can be a general policy or a specific act by an employer. *See, e.g.*, *Crawford*, 555 U.S. 271 (involving implicit opposition to specific acts rather than a general policy by the employer).  The EEOC can bring a retaliation claim based on Sure-Ondara's opposition to the denial of her specific request, regardless of North Memorial's general policy.

Further, the basis for the distinctions in the Court's examples of what constitutes opposition is unclear.  In its "not based on a religious practice" hypothetical, the Court posits that (at least in some circumstances) a request for a religious accommodation arguably constitutes opposition, even where the denial of that request is legally justified.  The only difference between that hypothetical and this case is that a discrimination claim (for failure to accommodate) would fail here if the accommodation was an undue burden, but fails in the hypothetical because the accommodation was "not based on a religious practice."  If the request is opposition in the one context, it cannot transform into something other than opposition simply because the legal justification for denying the request changes.

Appellate Case: 17-2926     Page: 14     Date Filed: 11/13/2018 Entry ID: 4725243

548 U.S. 53, 68. Here, the action was North Memorial's withdrawal of its conditional job offer and refusal to employ Sure-Ondara, which it does not dispute was materially adverse.

The EEOC has also produced sufficient evidence to survive summary judgment on the final element of its claim, the requirement that a retaliation plaintiff must show the adverse action was taken because of the protected activity. 42 U.S.C. § 2000e-3(a). North Memorial claims that it "revoked Sure-Ondara's conditional job offer because it was legitimately and sincerely concerned that, if hired, Sure-Ondara could not be counted on to work her designated shifts." While this may have been North Memorial's real reason for rescinding its job offer to Sure-Ondara, it is improper on the record before us to credit this explanation for purposes of summary judgment. Sure-Ondara repeatedly and expressly told North Memorial that she would take the job even without the accommodation and would "make it work." When asked for clarification about what she meant by "make it work," she told North Memorial that she meant: "that I would try and find my own replacement, and if not able to find one, that meant that I will work the shift anyway." In light of this evidence, a reasonable factfinder could conclude that North Memorial's proffered reason for withdrawing the job offer was pretextual.

That said, I do share the Court's apparent concern that Title VII not be read so that meritless discrimination claims based on a failure to accommodate may simply be repackaged and resurrected as retaliation claims. In my view, however, it is the causation element that properly does the work of weeding out such claims, not the opposition requirement. Where an employer, after denying an accommodation request that it is not legally obligated to grant, refuses to hire an applicant because the applicant cannot or will not perform the job without accommodation, the employer can show the legitimacy of the action by evidence that the inability to perform the job was the cause of the employer's adverse action, rather than retaliation for making the accommodation request. Unlike such repackaged claims, the claim here should

-15-

survive because there is evidence of retaliation, namely the evidence that Sure-Ondara told North Memorial she would work the job even without the accommodation and would show up for work if she could not find a replacement. Despite her willingness to work without accommodation, North Memorial withdrew its job offer, making it reasonable for a fact-finder to infer that it did so because she had requested an accommodation.

In sum, I would follow the Supreme Court's reading of Title VII's opposition clause in *Crawford*, as well as this Court's precedent in the parallel ADA context, and conclude that requesting a religious accommodation can constitute protected activity. Because of this conclusion, and because there is at least a genuine dispute of material fact on the other elements of the EEOC's claim, I would reverse the district court's grant of summary judgment.  I respectfully dissent.

———————————————————